O’Neall, J.
delivered the opinion of the Court.
In this case, before I proceed to discuss the questions involved in the appeal, I trust I may, without impropriety, be allowed to make a few remarks to remove some of the continual clamoring with which we have been assailed, about the supposed injustice of this case.
In March, 1841, the case of Thomas Wells v. Judah Barrett, in which this defendant, Cohen, was summoned as a garnishee, and whose return was contested, and an issue made up on it, was first tried before me and a most intelligent jury of Richland district, at this place. In it the defendant was defended by two most able and zealous counsel, one of -whom (Col. Moses) is especially remarkable for his tact and ability, in. the management of every case, before a jury. It appeared that Barrett was hopelessly insolvent; that just at the moment when this fact was tobe made known to a community, (the people of Columbia,) who had heretofore regarded him as one of their richest and most intelligent and enterprising men, he conveyed to the defendant all his estate in South Carolina, (except some small portion, then or before conveyed to a woman with whom he lived,) and also his estates in the Southwest.— These conveyances were, it is true, on an apparent money consideration ; and it is equally true, that there was proof that the defendant had the means of paying a sum approaching the value of the Columbia property, and that he had made payments. Still there were witnesses who proved that Mr. Cohen had not the means of making such a purchase. So, too, on examining the evidences of payment, it became apparent to my mind and that of the jury, that that was also more pretensive than real. So, too, the sum professed to be paid, $21,650, was but a very little over one-half of the value of the houses and lots in Columbia, $36,500, andjhe slaves, $5,150 — making a total *556 of $41,650. This statement is made very much from memory, (aided, however, by the statement of the case of Sherman and DeBruhl v. Barrett, tried in Charleston, Jan. Term 1S40, 1 McMul. 140, and in which a Charleston jury found also this very transaction to be fraudulent,) and I think it conclusively shows that the defendant, although he may not be guilty of a great moral fraud, is so affected by legal fraud that lie never ought to complain of the verdict against him. Indeed, his affidavit in this very case, most conclusively shows the fraud. He has sworn, that he paid to Barrett, immediately after the sale, the proceeds of the sale of the very negroes, whom he pretends he had previously bought from and paid for to Barrett.— The jury found a verdict in the case of Wells v. Barrett, the exact counterpact of that stated in the brief. No appeal was prosecuted from this decision. In July of the same year, the case of Sherman v. Barrett, in which the same issue against this defendant as garnishee, which had been tried in Wells v. Barrett, was again tried before me and another equally intelligent jury of Richland, at this place. The same proof was again given, and the jury found the verdict in the brief. Two juries in Columbia, and one in Charleston, have found this very transaction to be fraudulent, and yet the hardihood is exhibited to declare there was no fraud. Such an assertion may be the result of great and far-seeing wisdom, but I would venture respectfully to suggest, that it is a great deal apter to be the result of that prejudice, which seeing will not see, and hearing will not hear.
So much for the preliminary matter. I now will address myself to the case. Confined to the grounds of appeal, as objections to the issuing of the writ of attachment, the whole Court agree there is no room to question the circuit decision. For let it be assumed, that neither the fi. fa. nor ca. sa. can be issued, as seems to be the result of this case. 2d Spears, 529, 535, Pringle v. Carter, 1 Hill 53. Then the question remains, what is the plaintiff’s remedy ? In this case, 2d Spears, 529, Judge Wardlaw, with the assent of the whole Court, held that *557 the verdict was like an amendmet of the return of the garnishee. If that be so, and we are now to read his return, as admitting everything stated in the verdict, it would have the effect of an admission, that the money found is applicable to the payment of the plaintiff’s debt, as the money of the absent debtor. Cannot the Court order money, thus admitted, to be paid over? None can, or will, deny that. If the Court has ordered it to be paid over, (as in this case,) aud the defendant has failed to comply, cannot the Court enforce that order ? To say that it cannot would be to make the mandate of the Court a sound and no more. But the case of Exparte Thurmond, 1 Bail. 606, tells us that an attachment may be issued to compel the performance of “ the orders” of a Court of record. The refusal of a garnishee to appear to a summons executed, has been ruled in Virginia to be a contempt punishable by attachment. 1 Virginia Cases, 314; 1 Bac. Abr. Tit. N. 2, Bouviei’s edition. This shows, that where no other remedy is given to enforce obedience, attachment is proper. The notion that a party has sworn off the contempt in advance, and therefore the writ cannot issue, is altogether wrong. It issues to enforce a money demand, and the party can only be discharged from arrest under it, by complying with the provisions of the insolvent debtors or prison bounds Act. Turmond's case, 1 Bail. 607—8—9—10.
But the ' argument, here, does not stop at the question, whether a ca. sa. can be rightfully issued; it is alleged : 1st. That the Court had no jurisdiction to make the property, in Cohen’s hands, liable to the plaintiff’s attachment, inasmuch as it was conveyed to him, and put in his possession before Barrett left the State. 2d. That the verdict found in the attachment case is so uncertain, that the plaintiff is not entitled to have any benefit from it.
The first of these objections presents a very novel and startling proposition ; it is in substance, that a debtor may one day fraudulently convey and deliver to a friend his property, and the next day leave the State, and that the property, thus conveyed, cannot be attached. This proposition is ingeniously sustained, by arguing that the legal *558 estate is out of the debtor, and therefore, having nothing at law. nothing can be seized. It is very true that, as between the parties, the fraudulent conveyance conveys all the grantor’s estate to the grantee ; but, as to creditors, the deed is void ; and where is the estate as to them ? In the grantor, is the answer. It must, therefore, as to them, be liable to every remedy which the law gives them to enforce their debts, be it attachment, execution, or anything else. This view is, I think, beautifully illustrated by.the law, in relation to a fraudulent donee possessing himself, after the donor’s death, of the goods given. The conveyance is good between the parties. The Administrator or Executor cannot gainsay it, yet the deed is void as against creditors, and they may sue the donee, as Executor de son tort, and charge him with their debts, in respect of the property so conveyed. Tucker v. Williams, Dud. L. R. 329; Backhouse v. Jett, Brockenb. 508—9.
But take up our attachment law, and the same result must follow. The preamble to the Act of 1744, 3 Stat. 617, recites the grievance to be, that where the debtor is absent, or absconding, from the State, and has moneys, goods, chattels and debts within the State, belonging and due and owing to him, that there is no means of making such goods, chattels and debts liable to his debts: it was therefore that the Act gave the writ of attachment to seize the goods, chattels and debts, “in the hands of any person or persons whatsoever.” It is true that the preamble speaks of the persons absent or absconded from the State, as carrying on “ trade or other business in this province, (State) by factors, agents, or attorneys,” yet it has never been supposed that the remedy by attachment was confined to such absent debtors as carried on trade by factors, agents or attorneys; nor was it ever supposed that they (factors, agents or attorneys,) were alone to be garnishees. The enactment gives the remedy against any absent debtor, and makes liable his property, in the hands of “ any person whatsoever.” To say that his goods and chattels, not conveyed or put out of his possession before he left the State, are alone liable, would in most cases be the greatest premium *559 ever offered to fraud, and would give to creditors, by way of attachment, the shell, after the oyster had been carefully removed. Such a construction would be strict indeed — stricter, by far, than ever the most strict constructionist demanded. The goods-and chattels of the debtor, fraudulently conveyed before leaving the State, are, as against his creditors, still his goods and chattels, and may be by them attached.
2d. It is supposed the verdict is so uncertain thatjhe plaintiff cannot now have any benefit from it. The law Court of Appeals thought and held otherwise, in Sherman v. Barrett & Cohen, 1 Rich. 459 — and to the argument there, I shall refer for the only argument necessary to meet that urged here. That decision we regard as concluding the whole matter discussed here, save the right to issue the attachment. That was the final judgment of a Court having full jurisdiction of the case, and this Court has no more right to interfere with that decision than it would have to set aside a judgment on a note or bond, rendered by the law Court, on a motion to set aside an execution, which for some cause found its way to the Court of Errors. The Court of Errors may review and reverse any decision considered as matter of authority. But it has no right to call up and set aside a judgment fixing the rights or interests of parties. No Court, except one of original jurisdiction, can do that. The 7th section of the Act of ’36 declares that the jurisdiction of the Court of Errors shall be confined to the following cases: — 1. Constitutional questions; 2. Where either of the Appeal Courts of Law or Equity may be divided; 3. Where two of the Judges of either of the said Courts shall require a cause to be further heard, in the Court of Errors.
This case comes up under the 3d class. The question before the Law Appeal Court was, whether an attachment could be issued. That question comes before this Court, and none other: and upon it, we entertain no doubt that an attachment may and ought to issue. The motion- is dismissed.
RichardsoN, J. EvaNs, J. JohNston, Ch. Caldwell, Ch. Dargan, Ch. and Withers, J. concurred.
Dunkin, Ch.
The defendant made no appeal from the verdict of the jury, and the Court of Appeals havé determined that the rule was properly made absolute. That decision is final and conclusive. The only question undetermined was, whether the order of the Court could be enforced by attachment, and I think the authority is fully vindicated in the judgment which has just been pronounced.

Motion dismissed.